UNITED STATES BANKRUPTCY COURT
SOUTEHRN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 20-13363-PGH<br>Chapter 11 |
| BULLSEYE COATING AND<br>BLASTING CORP., | |
| Debtor.<br>_____/ | |

### CREDITOR'S, (ANTONIO BALESTENA), OMNIBUS EXPEDITED MOTION: 1) TO DISMISS FOR BAD FAITH; AND/OR 2) ABSTENTION

Comes Now, the Creditor, **ANTONIO BALESTENA** ("Creditor"), by and through undersigned counsel, and files and serves the instant *Omnibus Expedited Motion: 1) To Dismiss For Bad Faith; And/Or 2) Abstention*, and states the following in support thereof

### I.   BANKRUPTCY FACTS

1. Debtor filed the instant bankruptcy case (#20-13363-PGHI) *via* a **barebones** Petition (ECF No. 1)[1] under Chapter 11 of Title 11 of the United States Code on March 12th, 2020, on the heels of a judgment and collection efforts by the instant Creditor relating to a several years' long litigation which went to trial finally in December, 2019, and for which a separate final judgment was entered against Debtor, and others, in favor of the Creditor on January 30th, 2020.  *See* Historical Facts *infra*.

2. The Debtor has listed and identified only two (2) unsecured creditors, of which the instant Creditor is the single largest, if not only, creditor of the Debtor. *See* ECF No. 2 (20 Largest Creditors listing).

3. The purported sole owner of the Debtor is Grisell Hernandez (*see* ECF No. 4) a co-judgment debtor of the Creditor, who also, contemporaneously

---

[1] The Court has issued a Notice of Deficiency (ECF No. 6) as to the materially omitted filings.

with the filing of the instant Bankruptcy Case, filed her own, second, Chapter 13 bankruptcy case in Case No. 20-13438-SMG on March 13, 2020[2] – despite the misrepresentation of same in the Debtor's Petition that an affiliate would not be filing bankruptcy as well (*see* ECF No. 1 at p.3, question 10) as Grisell Hernandez's Certificate of Counseling (*see* Exhibit "B" hereto, a true and correct copy of ECF No. 3 in Case No. 20-13438-SMG) indicates that she was indeed filing bankruptcy as the date of her Certificate of Counseling was March 11th, 2020.

4. This is a two-party dispute between the Debtor and the Creditor, for which a judgment was entered in favor of the Creditor against, among others, the Debtor and Grisell Hernandez as set forth further herein-below.

5. The issues, further described *infra*, in the State Litigation between Creditor and Debtor, as well as other third parties, evolved around the fact that Grisell Hernandez ("Hernandez"), the former co-owner (with Creditor and Creditor's Father) of an entity known as **Florida Powder Coating Solutions, Corp. d/b/a Bullseye Powder Coating** ("**Bullseye #1**") purposefully transferred assets, equipment, clients, operations, employees, etc. from Bullseye #1 ultimately to the Debtor and Hernandez.

6. The instant Debtor has already been determined to be the mere continuance of Bullseye #1, and the assets of Debtor were subject of a state court injunction (which has not been dissolved). *See infra*.

II.   **PRE-PETITION FACTS**

7. Pre-petition, Debtor was embroiled in litigation in two (2) separate lawsuits with Creditor, and with Creditor's father, as they related to ownership, operations and the fraudulent conduct of the Debtor and Hernandez.

8. Hernandez created Debtor to fraudulently transfer and abscond with the assets, equipment, location of operations and book of business of **Bullseye #1.**

---

[2] *See* Exhibit "A hereto, a true and correct copy of the Docket of Grisell Hernandez's current bankruptcy case.

9. Specifically, in State Lawsuit No. 1, the instant Creditor (as co-owner of Bullseye #1) sued Debtor, Hernandez and others as it related to the fraudulent transfer and disposition of the co-ownership interest of Creditor in Bullseye #1, the disposition and dissipation of the assets of Bullseye #1 and the fraudulent transfer of the assets of Bullseye #1 by Debtor and Hernandez and others in Case No. 15-020163 (25) in the 17th Judicial Circuit Court of Florida (Broward County Circuit Court).

10. In the interim, Creditor, in said litigation (State Lawsuit No. 1), obtained an agreed injunction against, among others, the Debtor and Hernandez, to prevent them from "using, selling, disposing of, encumbering, conveying or transferring any of the assets, bank accounts, equipment or liabilities of" Bullseye #1, as well as "destroying, deleting, mutilating, concealing, altering or disposing of any of the assets and equipment of" Bullseye #1 until further order of the State Court. *See* Exhibit "C" hereto (the "Injunction Order").

11. Eventually, after several years of motion practice and intervening first bankruptcy case of Hernandez, as well as a mutli-day trial, Creditor prevailed against Hernandez and Debtor and obtained a Final Judgment (*see* Exhibit "D" hereto) on January 30th, 2020, wherein the State Court found:

    a. the assets transferred from Bullseye #1 to Bullseye #2 were intentionally and willfully fraudulently transferred and remained and otherwise were in fact the assets of Bullseye #1 (*see* Exhibit D at p.2);

    b. Bullseye #2 was in fact a mere continuation of Bullseye #1 (*see* Exhibit D at p.3);

    c. Directed the judicial dissolution of Bullseye #1 (*see* Exhibit D at pp. 3-4);

    d. Hernandez incorporated a similarly named entity (Bullseye Powder Coat, Inc.), while operating Bullseye #1, at the same address as Bullseye #1 (*see* Exhibit D at p.4);

e. Hernandez commingled the assets of Bullseye#1 with Debtor and other entities (*see* Exhibit D at pp.5-6);

f. Hernandez diverted income of Bullseye #1 to Debtor and other entities (see Exhibit D at pp.5-6);

g. Hernandez incorporated Debtor during the pendency of the ongoing State Lawsuit No. 1 (*see* Exhibit D at pp.5-6);

h. Debtor violated the Injunction by continuing to carry on business operations after judicial dissolution and merging operations of Bullseye #1 into Debtor post injunction (*see* Exhibit D at p.6);

i. The computers of Debtor were wiped clean just eight (8) days prior to the deposition of Hernandez in an effort to destroy evidence (*see* Exhibit D at pp.7-8);

j. Hernandez breached her fiduciary duty to Creditor (Count III of the Complaint) by commingling assets of Bullseye #1 with other entities, including Debtor; unlawfully removing Creditor as President of Bullseye #1; unlawfully removing Creditor as a signer on Bullseye #1's bank accounts; denying Creditor access to Bullseye #1's equipment and electronic data; and, Hernandez's conspiracy to create a fraudulent loan for purposes of transferring Bullseye #1's assets to Debtor (*see* Exhibit D at pp. 11-12);

k. Unlawful distributions were made to Hernandez and Debtor (*see* Exhibit D at pp. 19-20);

l. Hernandez and others committed intentional and willful fraudulent transfers to herself, Debtor and related entities (*see* Exhibit D at pp. 21-24), and in fact fraudulently transferred and conspired to transfer the assets of Bullesye #1 to Debtor on February 2, 2016 (*see* Exhibit D at pp.21-22);

m. Hernandez and others committed civil conspiracy to remove the assets of Bullseye #1 and deprive Creditor and Bullseye #1 of

      the value of Bullseye #1 of its assets and Creditor's business interests in same (*see* Exhibit D at pp. 24-27);

    n. Hernandez breached her joint venture agreement (*see* Exhibit D at pp. 28-29); and,

    o. Hernandez committed violations of Florida's RICO statute (*see* Exhibit D at pp. 29-35); and,

    12.    In the interim, in State Lawsuit No. 2, Antonio Balestena Sr. (Creditor's father) also sued, in proceedings supplementary, Hernandez and Debtor in Case No. 15-20347(21) in the 17th Judicial Circuit Court of Florida (Broward County Circuit Court) and obtained a final judgment (*see* Exhibit "E" hereto), jointly and severally against Debtor and Hernandez for fraudulently transferring the assets of Bullseye#1 to Debtor with the intent to hinder, delay or defraud said creditor; and, in fact retained possession of such fraudulently transferred assets of Bullseye #1, concealed the transfer, while being sued by said creditor (in the midst of the litigation between them) and that Hernandez had falsified a loan from herself (which was never actually funded) to disguise the transfer. The State Court went on to void the fraudulently recorded uniform commercial code financing statement relating to such fraudulent transfer and also found that Debtor was the "mere continuance" of Bullseye #1 (*see* Exhibit "E" hereto).[3]

    13.    Thereafter, in an effort to avoid payment of the Final Judgment(s) (Exhibits D and E hereto), to get around the State Court injunction and the State Court's findings that the instant Debtor is the mere continuance of Bullseye #1, and keep fraudulently transferred assets and otherwise be rewarded for such willful and harmful acts, the Debtor, via Hernandez, filed this bankruptcy.

---

[3] While this state litigation was pending, Debtor filed a bankruptcy case as well to thwart the matter in Case No. 16-17566-LMI, which was a bankruptcy that was eventually dismissed as well.

III. **MEMORANDUM OF LAW**

   a. **BAD FAITH BANKRUPTCY (DISMISSAL) AND/OR ABSTENTION**

   i. **Bad Faith Dismissal**

It is the Creditor's position that the instant Chapter 11 petition should be dismissed for cause. 11 U.S.C. §§ 1112(b) provides authority to dismiss a case for cause. 11 U.S.C. § 1112(b)(1) authorizes the Court to dismiss this Case upon finding that "cause" exists to do so and if dismissal is in the best interests of creditors and the bankruptcy estate. Although several examples of "cause" are listed under 11 U.S.C. § 1112(b)(4), such list is not exhaustive and "the [C]ourt is given judicial discretion to determine what factors shall constitute "cause" under the circumstances of each case." *Colonial Daytona Ltd. P'ship v. Am. Savings of Fla.*, 152 B.R. 996, 1001 (M.D. Fla. 1993). The absence of good faith in seeking Chapter 11 bankruptcy protection is, alone, sufficient "cause" to dismiss a bankruptcy case. *Phoenix Piccadilly, Ltd. v. Life Ins. Co. Of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988). This is true despite the potential for a successful reorganization. *Id*. at 1395. *See also Pacific Rim Inv., LLP v. Oriam, LLC (In re Pacific Rim Inv., LLP)*, 243 B.R. 768, 772-73 (D. Colo. 2000) (rejecting the debtor's argument on appeal that its ability to reorganize should preclude dismissal of the bankruptcy case for bad faith).

If a motion to dismiss a bankruptcy case is contested, the movant must demonstrate "cause" exists for dismissal by a preponderance of the evidence. *See, Colonial Daytona Ltd. P'ship*, *supra* at 1002. To determine whether bad faith exists under the circumstances of this Case, the Court should consider the following factors, which may be evidence of an intent by the Debtor to abuse the reorganization process: (a) the extent of the Debtor's assets and if they are the subject of litigation; (b) the total amount of general unsecured claims; (c) the number of persons employed by the Debtor; (d) whether the Debtor's financial disputes involve disputes that may be resolved in pending litigation; (e) if the timing of the bankruptcy filing evidences an intent to frustrate efforts by creditors

to enforce rights; and (f) how the Debtor has conducted itself during the case. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394-95.

Here, the record of this Case is replete with evidence of bad faith: Debtor is purportedly owned by Hernandez, a person who has been found to participate in willful fraudulent activities and otherwise ignore injunctions without worry, while continuing to seek to benefit from the bankruptcy cases she has filed to maintain the assets that have been already determined to belong to Bullseye #1 – in other words, the purported property of the instant Debtor is not the Debtor's and Debtor is in violation of an ongoing injunction entered by the State Court.

The total amount of unsecured debts speaks volumes in this Case, as the single largest creditor of this Debtor in ECF No. 2 is the instant Creditor; whose interests in the assets of Bullseye #1 continue to be impaired and otherwise removed from the efforts to judicially winddown Bullseye #1 -- despite the language in the Final Judgment (Exhibit "D") which mandates such winding down.

Furthermore, the timing of the instant bankruptcy reflects the efforts of the Debtor and Hernandez to frustrate both the Creditor in his collection activities and otherwise winding down the affairs of Bullseye #1, but also in the efforts to frustrate the rulings and injunction of the State Court.

The litigation between Creditor and Debtor, and others has been pending since the year 2015, over 5 years now, and the Debtor and Hernandez are trying their best to avoid surrendering the assets they stole from Bullseye #1.

These tactics should not be rewarded, and if anything, it is clear that Hernandez cannot be trusted. After all she willfully flaunted a State Court injunction (which Hernandez consented to), spoiled evidence on purpose by deleting the computer information of the Debtor to prevent discovery of her activities, and post-litigation incorporated the instant Debtor to transfer the assets to in order to avoid judicial authority and the Creditor's rightful claim to the value thereof.

Bankruptcy courts routinely find dismissal warranted when a petition is filed with the "intent to frustrate" an ongoing state court proceeding, like the matter at bar. *See, e.g. Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir.1986), *In re Manhattan Industries, Inc.*, 224 B.R. 195, 199, 201 (Bankr. M.D. Fla. 1997).

Although there is no precise test for determining bad faith, courts have recognized factors which show an "intent to abuse the judicial process and the purposes of the reorganization provisions." *Natural Land,* 825 F.2d at 298. These factors include the timing of the filing of the petition, *id.;* whether the debtor is "financially distressed," *In re Waldron,* 785 F.2d 936, 939 (11th Cir.), *cert. dismissed sub nom. Waldron v. Shell Oil Co.,* 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986); whether the petition was filed strictly to circumvent pending litigation, *Holtkamp,* 669 F.2d at 508; and whether the petition was filed solely to reject an unprofitable contract, *Waldron,* 785 F.2d at 939–41. *See also Furness v. Lilienfield,* 35 B.R. 1006 (D.Md.1983) (petition dismissed which had been filed just prior to district court civil RICO trial after a continuance in the trial had been denied); *In re Wally Findlay Galleries (New York), Inc.,* 36 B.R. 849 (Bankr.S.D.N.Y.1984) (petition dismissed which was filed the same day judgment entered against debtor in state court); *In re Smith,* 58 B.R. 448 (Bankr.W.D.Ky.1986) (petition dismissed where financially sound debtor filed to avoid posting a supersedeas bond in pending state court litigation).

The court in *In re Natural Land Corp*, 825 F.2d 296, 298 (11th Cir. 1987) further noted, with approval, some of the various cases finding bad faith and approving of dismissal –

> "Although there is no particular test for determining whether a debtor has filed a petition for reorganization in good faith, "[i]n finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions." *Albany Partners, Ltd. v. Westbrook* (*In re Albany Partners, Ltd.*), 749 F.2d 670, 674 (11th Cir.1984); *see also In re 299 Jack-Hemp Assocs.,* 20 B.R. 412, 413 (Bankr.S.D.N.Y.1982) (dismissing petition

raising "disingenuous" attempt to bring administration of decedent's estate within bankruptcy court's jurisdiction). Factors the bankruptcy court may consider include the following: (1) the lack of a "realistic possibility of an effective reorganization," *Albany Partners, Ltd.,* 749 F.2d at 674; (2) evidence that "the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights," *id.;* (3) whether the debtor is seeking to use the bankruptcy provisions "to create and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business," *In re Victory Constr. Co.,* 9 B.R. 549, 564 (Bankr.C.D.Cal.1981), *modified,* 9 B.R. 570, *vacated as moot,* 37 B.R. 222 (Bankr. 9th Cir.1984); (4) the timing of the debtor's relevant actions, *see In re 299 Jack-Hemp Assocs.,* 20 B.R. at 413; (5) whether the debtor appears to be merely a "shell" corporation, *see In re Dutch Flat Inv. Co.,* 6 B.R. 470, 471 (Bankr.N.D.Cal.1980); and (6) whether the debtor was created, or the subject property transferred to the debtor, "for the sole purpose of obtaining protection under the automatic stay [of Chapter 11] by filing bankruptcy, *Meadowbrook Investors' Group v. Thirtieth Place, Inc.* (*In re Thirtieth Place, Inc.*), 30 B.R. 503, 506 (Bankr. 9th Cir.1983). This list of factors is not exhaustive; nor is there any single factor that will necessarily lead to a finding of bad faith. *See In re Levinsky,* 23 B.R. 210, 217 (Bankr.E.D.N.Y.1982); *see generally* Ordin, *The Good Faith Principle in the Bankruptcy Code: A Case Study,* 38 Bus.Law. 1795 (1983) (discussing factors of significance in cases dismissed for lack of good faith).

The facts in the Case at bar weigh heavily in favor of a finding of bad faith by the Debtor in accordance with the *Piccadilly* factors. In the *Piccadilly* case, the Eleventh Circuit affirmed a bad faith finding as "cause" for dismissal. Dismissal of this Case (and any pending adversary proceedings) is in the best interests of

the Debtor's creditors and the Case was filed in bad faith, as reflected by the fact that:

1. The assets upon which this Debtor would need to use for purposes of any attempt at reorganization are not the Debtor's and Debtor is the mere continuance of Bullseye #1;
2. the timing of the filing just after entry of a significantly adverse ruling where the Creditor was seeking to execute on his judgment;
3. the simultaneous filing of a Chapter 13 petition by Hernandez to thwart such collection efforts and discovery of the disposition of assets;
4. the prior filing of an earlier Chapter 13 by Hernandez (which was dismissed after motion practice) to thwart the discovery process in the State Court matters;
5. Debtor was created by the insider, Hernandez, to abscond with fraudulently transferred assets and in an effort to avoid the State Court's authority; and,
6. This is simply a two-party dispute, as Debtor has no creditors.

This is not the case of a troubled company seeking help under the provisions of the bankruptcy code in order to obtain a breathing period with which to deal with its creditors.  Nor is it a case of a legitimately distressed debtor attempting to reorganize.   Rather, this is the case of seasoned, cold, calculating and dishonest Debtor (through its insiders, Hernandez), once again attempting to game the system so that they can purloin as much revenue as possible while hiding behind the shield of 11 U.S.C. § 362. Therefore, this Case should be immediately dismissed with sanctions, fees and costs awarded to Creditor and any stay be deemed annulled retroactively to the Petition Date. .

### ii.    Abstention

Furthermore, 28 U.S.C. § 1334(c)(1) provides:

> Except with respect to a case under Chapter 15 of title 11, nothing in this section prevents a district court in the interest

of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Under this permissive abstention provision, "courts have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice or in the interest of comity with state courts or respect for state law." *In re United Container LLC*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002). "Where a court proceeding sounds in state law and bears a limited connection to a debtor's bankruptcy case, abstention is particularly compelling." *Southerland v. Smith*, 142 B.R. 980, 982 (M.D. Fla. 1992).

Bankruptcy courts have identified numerous factors to consider in deciding whether abstention is warranted under section 1334(c)(1). The court in *Clegg v. Bristol-Myers Squibb Co.,* 285 B.R. 23 (M.D. Fla. 2002), listed the principal ones:

(1) the effect or lack thereof on the efficient administration of the bankruptcy estate if a court abstains;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis of the action, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted 'core' proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to
allow judgments to be entered in state court with enforcement left to the
bankruptcy court;

>(9) the burden o[n] the bankruptcy court's docket;
>
>(10) the likelihood that the commencement of the proceeding in bankruptcy court involved forum shopping by one of the parties;
>
>(11) the existence of a right to a jury trial;
>
>(12) the presence in the proceeding of non-debtor parties.

*Id*. at 37 (*citing In re Wood*, 216 B.R. 1010, 1014 (Bankr. M.D. Fla. 1998)). These factors are not exclusive, but rather serve as a guide to the Court in exercising its discretion. *In re Alliance Leasing Corp.,* 2007 WL 5595446, *12 (Bankr. M.D. Tenn. 2007). No one factor is determinative, *In re Resource Tech. Corp.*, 2004 WL 419918, *2 (N.D. Ill. 2004), nor does a court need to find that every factor favors abstention to abstain. *In re Cody, Inc.,* 281 B.R. 182, 190 (S.D.N.Y. 2002).

Here, the majority of factors are present and overwhelmingly support permissive abstention.

The only matter this Debtor seeks to have this Court interject in is the State Litigation to avoid the injunction therein, and otherwise avoid turning over and accounting for the assets of Bullseye #1, which is subject of a judicial dissolution. The matter in state court is in collection and enforcement, the sole true creditor of this Estate is the instant Creditor, and otherwise Bullseye #1 for purposes of recovering its fraudulently transferred assets from Debtor and Hernandez.

Debtor and Hernandez are trying to obtain a windfall and continue to use the fraudulently transferred assets to generate profits and income for themselves while avoiding the sole legitimate creditor, the instant Creditor.

This case is nothing more than a two-party dispute, and the Court should abstain.

"One of the primary concerns of 28 U.S.C. § 1334(c)(1) is 'comity and respect for state law.'" *Agee*, 2005 WL 2387603, at *6. Thus, factors 2 and 3 weigh in favor of abstention. In the matter at bar, the Debtor is facing

injunction violations and continuing to abscond with fraudulently transferred assets, all of which the State Court has been dealing with for five (5) years preceding this Bankruptcy Case.

While this Court is capable of deciding state law issues, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir. 1997); *see also Agee*, 2005 WL 2387603, at *6 (explaining that "[i]t is true that on the surface, the state law issues presented do not appear to be difficult or complex, however this court is willing to recognize that state courts routinely hear state law issues and are likely in a better position to resolve those issues.").

In a case such as this, which has a tenuous link to bankruptcy other than for the petition filing, the mere presence of state law claims militates in favor of abstention, even if the claims or issues are not particularly complex. *See, Delphi Auto. Sys., LLC v. Segway Inc.*, 519 F. Supp. 2d 662, 671 (E.D. Mich. 2007) (in abstaining under section 1334(c)(1), court noted that "[w]hile the state law claims do not appear to be based on any unsettled issues of state law, this Court is convinced that Plaintiff's state law claims are only indirectly related to its bankruptcy case").

Finally, no matter the inherent difficulty of these claims, bankruptcy courts recognize that state courts are better equipped to deal with questions of state law*, Clegg*, 285 B.R. at 37 ("the Florida state court is perfectly able (and in fact best suited) to adjudicate the Florida law claims in this case"), if for no other reason than that allowing state courts to resolve state law issues minimizes the risk of inconsistent rulings concerning the various states' laws. *See, Orion Refining Corp. v. Fluor Enters., Inc.,* 319 B.R. 480, 488 (E.D. La. 2004).

Factors 2, 3 and 6, thus, favor abstention.

### iii.    Additional Considerations

Additional factors to consider are that this Court can also dismiss this Case under 11 U.S.C. Sec. 1112(B)(4)(A) and/or (B).

Specifically, 11 U.S.C. § 1112(b)(4)(A) "provides the bankruptcy court with the requisite authority to terminate a chapter 11 case based on a showing of unreasonable delay, or continuing losses coupled with the absence of a reasonable likelihood of rehabilitation, or inability to effectuate a plan of reorganization." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 371 (5th Cir.1987) (*en banc*), aff'd 484 U.S. 365 (1988*); Sun Valley Newspapers v. Sun World Corp. (In re Sun Valley Newspapers)*, 171 B.R. 71, 74 (9th Cir.BAP1994) (*citing Timbers of Inwood Forest Assocs*. for the proposition that there must be "a reasonable possibility of a successful reorganization within a reasonable time."). In connection with this statutory provision, the bankruptcy court must "evaluate each debtor's viability and rate of progress in light of the 'best interest of creditors and the estate.'" *Timbers of Inwood Forest Assocs*., 808 F.2d at 372.

In the matter *sub judice*, it is clear that, given the State Court's finding that the Debtor is a mere continuance of Bullseye #1, and that Bullseye #1's assets were transferred or otherwise commingled with Debtor, that these assets are still Bullseye #1's, the Debtor cannot reorganize with fraudulently transferred assets that do not belong to it. Therefore, there is no probability of reorganization.

Further, 11 U.S.C. § 1112((b)(4)(B) allows for dismissal for gross mismanagement. *Gateway Access Solutions, Inc*., 374 B.R. 556, 566 (Bankr.M.D.Pa.2007).  Failure of a debtor to properly report income and expenses constitutes evidence of "gross mismanagement" under § 1112(b)(4)(B). *In re Halal* 4 U LLC, 2010 WL 3810860, *4 (Bankr. S.D.N.Y. 2010).

Here, the record from the State Court litigation (*see* Exhibit "C") reflects intentional gross mismanagement of exposing Debtor to liability for fraudulent transfer san then using Debtor illegally in violation of an injunction to operate with assets fraudulently transferred to it. Based upon these further grounds the Debtor is mismanaging the Estate and this Case should be dismissed.

Therefore, based upon the facts and the law, this Case should be forthwith dismissed.

WHEREFORE, Creditor seeks an order of dismissal (with prejudice), abstention and/or such other and further relief appropriate under the circumstances, as well as sanctions, fees and costs under 11 USC §105 against Debtor and its counsel.

JAMES B. MILLER, P.A.
Counsel to Creditor
19 West Flagler Street, Suite 416
Miami, FL 33130
Tel. No. (305) 374-0200
Fax. No. (305) 374-0250
 /s/ James B. Miller
JAMES B. MILLER, ESQ.
Florida Bar No. 0009164

### Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of this Pleading and Attachments were served this 19th day of March, 2020 *via* United States mail upon those named on the attached Service List; and *via* CM/ECF by the Clerk of the Court immediately upon the fling of same with the Bankruptcy Court upon those named below receiving copies *via* CM/ECF:

 /s/ James B. Miller
JAMES B. MILLER, ESQ.
Florida Bar No. 0009164

<u>ECF SERVICE:</u>
**Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
**Peter D Spindel**    peterspindel@gmail.com, peterspindelcmecf@gmail.com

### Certificate of Admission

**I HEREBY CERTIFY** that I am admitted to the Bar for the District Court in and for the Southern District of Florida, and am duly-qualified to practice before this Court as set forth in Local Rule 2090-1(A).

Respectfully submitted this 19th day of March, 2020.

 /s/ James B. Miller
JAMES B. MILLER, ESQ.
Florida Bar No. 0009164